State of Nebraska, appellee, v.
Nathan A. Modlin, appellant.
___ N.W.2d ___

Filed August 21, 2015.    No. S-14-590.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Appeal and Error.** When reviewing whether a consent to search was voluntary, as to the historical facts or circumstances leading up to a consent to search, an appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which an appellate court reviews independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law.

3. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

4. **Constitutional Law: Search and Seizure: Blood, Breath, and Urine Tests.** The drawing of blood from a person's body for the purpose of administering blood tests is a search of the person subject to Fourth Amendment constraints.

5. **Constitutional Law: Search and Seizure.** Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment to the U.S. Constitution, subject only to a few specifically established and well-delineated exceptions.

6. **Warrantless Searches.** The warrantless search exceptions recognized by the Nebraska Supreme Court include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

7. **Constitutional Law: Search and Seizure: Duress.** To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne. Consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological.

8. **Search and Seizure.** Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.

9. **Constitutional Law: Blood, Breath, and Urine Tests.** A court may not rely solely on the existence of an implied consent statute to conclude that consent to a blood test was given for Fourth Amendment purposes, and the determination of whether consent was voluntarily given requires a court to consider the totality of the circumstances.

10. **Blood, Breath, and Urine Tests.** In considering the totality of the circumstances, the existence of an implied consent statute is one circumstance a court may and should consider to determine voluntariness of consent to a blood test.

11. **Search and Seizure.** Once given, consent to search may be withdrawn. Withdrawal of consent need not be effectuated through particular "magic words," but an intent to withdraw consent must be made by unequivocal act or statement.

12. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?

Petition for further review from the Court of Appeals, Irwin, Bishop, and Riedmann, Judges, on appeal thereto from the District Court for Hall County, Teresa K. Luther, Judge, on appeal thereto from the County Court for Hall County, Arthur S. Wetzel, Judge. Judgment of Court of Appeals affirmed.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Douglas J. Peterson and Jon Bruning, Attorneys General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Nathan A. Modlin was convicted in the Hall County Court for driving under the influence (DUI), first offense, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). Modlin claims that the county court erred when it overruled his motion to suppress evidence of the result of a blood test and that the district court and the Nebraska Court of Appeals erred when they affirmed the county court's ruling. We granted Modlin's petition for further review.

Modlin argues that the evidence should have been suppressed because the warrantless drawing of his blood did not satisfy any exception to the Fourth Amendment requirement of a search warrant. We conclude that a blood draw of an arrestee in a DUI case is a search subject to Fourth Amendment principles and that when the State claims the blood draw was proper pursuant to the consent exception to the warrant requirement, actual voluntary consent is to be determined by reference to the totality of the circumstances, one of which is the implied consent statute. Because the facts show that Modlin voluntarily consented to the blood test, the overruling of his motion to suppress was not error. We affirm.

## STATEMENT OF FACTS

On June 15, 2013, Deputy Casey Dahlke initiated a traffic stop after he observed a vehicle cross the centerline of a two-lane highway three times. Dahlke observed that Modlin, who was the driver and sole occupant of the vehicle, had an odor of alcohol about him and glassy, bloodshot eyes. Modlin admitted to drinking two beers, and he exhibited signs of

impairment on all three field sobriety tests conducted by Dahlke. Modlin submitted to a preliminary breath test which showed a result of more than .08 grams of alcohol per 210 liters of breath.

Dahlke placed Modlin under arrest and transported him to a hospital for a blood test. Dahlke gave Modlin the "Post Arrest Chemical Test Advisement" form to read. The form stated that Modlin was under arrest for DUI and that the officer was "requiring [Modlin] to submit to a chemical test or tests of [his] blood, breath, or urine to determine the concentration of alcohol or drugs in [his] blood, breath, or urine." The form also stated, "Refusal to submit to such test or tests is a separate crime for which you may be charged." The form further stated that the officer had the authority to direct whether the tests should be of blood, breath, or urine. Under the heading, "Request for test," Dahlke selected a test of Modlin's blood to determine the alcohol content. Dahlke asked Modlin if he was capable of reading and understanding the form, and Modlin replied "yes." Modlin read the form, signed it, and indicated that he had no questions. Modlin's blood was then drawn, and the result of the blood test was .217 grams of alcohol per 100 milliliters of blood.

The State charged Modlin in county court with one count of DUI, first offense, aggravated, and one count of crossing over the centerline. Prior to trial, Modlin filed a motion to suppress and two supplemental motions to suppress. In the original motion, Modlin moved to suppress (1) all evidence obtained as a result of the stop, because the initial stop was not based upon probable cause; (2) statements made while in custody, before *Miranda* warnings were given; and (3) the result of the blood test which he asserted was taken without probable cause. In the first supplemental motion, he sought to suppress the result of the preliminary breath test, which he asserted was taken in violation of the Fourth Amendment, and in the second supplemental motion, Modlin sought to suppress the result of the blood test for the additional reason that it was

a warrantless search in violation of the Fourth Amendment. On further review, Modlin has abandoned all the bases for his motions to suppress except the Fourth Amendment challenge to the blood test.

A hearing was held on Modlin's motions to suppress, and both Modlin and Dahlke testified at the hearing. Dahlke testified that he gave Modlin the chemical test advisement form, which Modlin read to himself. Dahlke testified that Modlin signed the form and stated he understood it and that after Dahlke asked whether he had any question about the form, Modlin said "no."

Modlin testified that when he signed the chemical test advisement form, he was "just trying to comply with what [Dahlke] was asking [him]" but that he "never consented to the blood draw." Modlin testified that when he read the form, he did not believe there was any way that he could not submit to the test. On cross-examination, Modlin admitted that he had told Dahlke that he understood the form and that he signed the form. He further admitted that he did not at any time tell either Dahlke or the phlebotomist that he did not want his blood drawn and that he did not try to prevent the phlebotomist from drawing his blood.

The county court overruled the motions to suppress. The court concluded that the initial stop was proper. With regard to the result of the blood test, the court determined that by choosing to operate a motor vehicle on Nebraska highways, under Nebraska's implied consent law, Modlin had given his consent to submit to a chemical test. The court further found that Modlin read the chemical test advisement form and that Modlin did not withdraw his consent. The court stated: "[Modlin] was given the option of consenting to a test or suffering the consequences if he withdrew his consent. [Modlin] voluntarily agreed to the test and there was no Fourth Amendment violation."

After the county court overruled Modlin's motions to suppress, the parties agreed to a stipulated bench trial. At the

trial, the State dismissed the charge of crossing over the centerline and reduced the DUI charge to nonaggravated DUI, first offense. The parties stipulated that the county court could consider all the evidence received at the hearing on the motions to suppress, subject to Modlin's objections and issues raised by the motions to suppress, and that Modlin preserved the objections and issues raised in his motions to suppress. The parties further stipulated that there was probable cause to arrest Modlin for DUI, that Modlin's blood was drawn and tested in compliance with applicable statutes and regulations, and that the alcohol content of Modlin's "blood was in excess of .08 [sic] grams of alcohol per 100 milliliters" of blood. The county court found Modlin guilty of DUI, first offense. The court sentenced Modlin to 6 months' probation, revoked his driver's license for 60 days, ordered him to pay a fine of $500 and the costs of prosecution, and ordered him to apply for an ignition interlock permit.

Modlin appealed his conviction to the district court. In his statement of errors, he alleged that the county court erred when it overruled his motion to suppress and second supplemental motion to suppress and when it concluded that the warrantless seizure of his blood did not violate the Fourth Amendment. Following a hearing, the district court affirmed the conviction. In its order, the district court determined that "Modlin gave informed consent [to the blood draw] thus negating the argument that a search warrant was necessary." The district court concluded that the county court properly overruled Modlin's motions to suppress.

Modlin appealed to the Court of Appeals and claimed that the county court erred when it overruled his motion to suppress evidence of the result of the blood draw and that the district court erred when it affirmed the county court's ruling. In an unpublished memorandum opinion filed on February 2, 2015, the Court of Appeals rejected Modlin's argument and affirmed his conviction.

The Court of Appeals reviewed Nebraska's implied consent law, Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014), which provides in subsection (1):

> Any person who operates or has in his or her actual physical control a motor vehicle in this state shall be deemed to have given his or her consent to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine.

The statute further provides that peace officers may direct any person arrested for suspicion of driving under the influence of alcohol to submit to a chemical test of his or her blood, breath, or urine and that a person who refuses to submit to a test shall be subject to administrative license revocation procedures and shall be guilty of a crime. § 60-6,197(2) and (3). Under the statute, the person "shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged." § 60-6,197(5). The Court of Appeals observed that this court has upheld the constitutionality of the implied consent law. See *State v. Williams*, 189 Neb. 127, 201 N.W.2d 241 (1972) (rejecting Fifth Amendment challenge to blood test evidence).

The Court of Appeals concluded that by driving his vehicle in Nebraska, Modlin consented to submit to chemical tests of his blood, breath, or urine pursuant to the implied consent statute. The Court of Appeals noted that consent was an exception to the warrant requirement of the Fourth Amendment. The Court of Appeals, however, acknowledged the difficult choice Modlin faced when he was advised that refusal to submit to the test was a separate crime for which he could be charged.

Modlin and the State directed the Court of Appeals to a recent U.S. Supreme Court case, *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013). The Court of Appeals addressed but rejected Modlin's contention

that under *McNeely*, Dahlke should have obtained a warrant in order to direct the blood test. In *McNeely*, the Court concluded that the natural metabolization of alcohol in the bloodstream, standing alone, did not present an exigent circumstance that justified an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk driving cases.

The Court of Appeals distinguished Modlin's situation from that of the defendant in *McNeely*. The Court of Appeals noted that whatever his internal feelings might have been, Modlin had not in any way expressed a withdrawal of his consent, whereas the defendant in *McNeely* had revoked his implied consent under Missouri's implied consent law. Therefore, the Court of Appeals concluded that Dahlke did not need a warrant before directing the blood draw, because Modlin had consented to it under Nebraska's implied consent law and had not manifested withdrawal of that consent. The Court of Appeals concluded that the county court had properly admitted evidence of Modlin's blood alcohol content over Modlin's motion to suppress and objections and that the district court had properly affirmed the ruling. The Court of Appeals affirmed his conviction.

We granted Modlin's petition for further review.

## ASSIGNMENT OF ERROR

Modlin claims, consolidated and restated, that the Court of Appeals erred when it determined that the warrantless drawing of his blood for alcohol testing was not a violation of his rights under the Fourth Amendment.

## STANDARDS OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). Regarding historical facts, we review the trial court's findings for clear

error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

[2] Likewise, we apply the same two-part analysis when reviewing whether a consent to search was voluntary. As to the historical facts or circumstances leading up to a consent to search, we review the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which we review independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law. See *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009).

## ANALYSIS

Modlin claims that the county court erred when it overruled his motion to suppress evidence of the result of his blood test and that the district court and Court of Appeals erred when they affirmed the county court's ruling. Modlin argues that the evidence should have been suppressed because the blood draw was a search for Fourth Amendment purposes, the search was conducted without a warrant, and no exception to the warrant requirement applied because implied consent does not constitute "consent" for Fourth Amendment purposes. The State maintains that, given the implied consent statute, Modlin gave his implied consent to the blood draw when he drove on a public roadway and did not withdraw that consent. We agree with both parties that the blood draw was a warrantless search for Fourth Amendment purposes, and we determine that after considering the totality of the circumstances, the county court did not err when it found that Modlin actually consented to the search.

[3,4] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Rodriguez*, 288 Neb. 878, 852 N.W.2d 705 (2014). It has long been recognized

that the drawing of blood from a person's body for the purpose of administering blood tests is a search of the person subject to Fourth Amendment constraints. See, *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013); *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); *Winston v. Lee*, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985); *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

[5,6] Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment to the U.S. Constitution, subject only to a few specifically established and well-delineated exceptions. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). The warrantless search exceptions recognized by the Nebraska Supreme Court include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id.* In the present case, the exception relating to exigent circumstances is discussed briefly in connection with our consideration of *McNeely*, but we focus on consent.

The parties ask us to consider whether and to what extent the U.S. Supreme Court's decision in *Missouri v. McNeely, supra*, controls the issues in this case. In *McNeely*, a motorist was stopped after speeding and crossing the centerline. The motorist refused to consent to a blood draw for the purposes of measuring his blood alcohol content. Officers had the test performed without the motorist's consent and without first obtaining a warrant. As the Court of Appeals correctly observed, the U.S. Supreme Court framed the issue as "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for *nonconsensual* blood testing in all drunk-driving cases." *McNeely v. Missouri*, 133 S. Ct. at 1556 (emphasis supplied). The Court

answered this question in the negative and concluded that exigency in this context must be determined case by case based on the totality of the circumstances.

Because it had been found as a factual matter that the motorist in *McNeely* did not consent to the blood draw, the U.S. Supreme Court's decision in *McNeely* focused solely on the exigency exception to the warrant requirement. Although a plurality of the Court acknowledged that implied consent statutes are among the "broad range of legal tools [States have] to enforce their drunk-driving laws and to secure [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws," 133 S. Ct. at 1566, the Court in *McNeely* did not directly decide the separate question whether the consent exception to the Fourth Amendment warrant requirement was satisfied solely by the operation of Missouri's implied consent statute.

In *Missouri v. McNeely, supra*, the U.S. Supreme Court rendered holdings with regard to the exigency exception. But in the instant case, neither the State nor the county court relied on exigency to justify the warrantless search; instead, they relied on the consent exception. Therefore, we need not decide in this case whether the exigency exception applies, and the holdings in *McNeely* relative to exigency are not explicitly relevant to the disposition of this case. As noted, a plurality of the Court in *McNeely* made reference to implied consent laws; however, the Court rendered no holdings with regard to the consent exception, because the facts showed that the defendant did not consent to the blood draw and, therefore, *McNeely* is not directly applicable to whether the blood draw performed on Modlin was justified under the consent exception to the warrant requirement of the Fourth Amendment.

Other courts have analyzed *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), and agree with our reading that *McNeely* does not explicitly provide guidance regarding the consent exception to the Fourth Amendment warrant requirement. See, e.g., *People v. Harris*,

234 Cal. App. 4th 671, 184 Cal. Rptr. 3d 198 (2015) (concluding that *McNeely* does not govern where defendant freely and voluntarily consented to blood test and that such consent satisfies Fourth Amendment); *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013) (rejecting broad view of *McNeely* and finding that although *McNeely* eliminated single-factor exigency exception to warrant requirement, warrantless extraction of blood, breath, and urine was still permissible under Fourth Amendment when defendant freely and voluntarily consented to testing); *State v. Fetch*, 855 N.W.2d 389 (N.D. 2014) (noting *McNeely* held that natural dissipation of alcohol in bloodstream is not per se exigent circumstance justifying exception to warrant requirement for nonconsensual blood testing in all drunk-driving investigations, but recognizing consent is separate exception to warrant requirement). In view of the limitations of *McNeely*, we agree with the Supreme Court of Georgia which stated: "[T]he analysis in this case must then focus on the voluntary consent exception to the warrant requirement because it is well settled in the context of a DUI blood draw that a valid consent to a search eliminates the need for . . . a search warrant." *Williams v. State*, 296 Ga. 817, 821, 771 S.E.2d 373, 376 (2015).

[7,8] We turn now to consideration of whether the consent exception justified the blood draw. We have stated the following with respect to the consent exception: To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001). Consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. *Id*. The determination of whether the facts and circumstances constitute a voluntary consent, satisfying the Fourth Amendment, is a question of law. *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009). Whether consent was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent. See *State v. Tucker,*

*supra*. See, also, *State v. Gorup*, 279 Neb. 841, 782 N.W.2d 16 (2010).

At this juncture, it is important to distinguish between "implied consent" and "actual consent." The Court of Appeals of Wisconsin stated:

> "Implied consent" is not an intuitive or plainly descriptive term with respect to how the implied consent law works. [It may be] a source of confusion. [T]he term "implied consent" [may be] used inappropriately to refer to the consent a driver gives to a blood draw at the time a law enforcement officer requires that driver to decide whether to give consent. However, actual consent to a blood draw is not "implied consent" . . . .

*State v. Padley*, 354 Wis. 2d 545, 564, 849 N.W.2d 867, 876 (Wis. App. 2014). In connection with actual consent, the *Padley* court continued:

> [T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give *actual* consent to a blood draw when put to the choice between consent or automatic sanctions [for refusal].

345 Wis. 2d at 571, 849 N.W.2d at 879 (emphasis in original). That is, ordinarily, the point at which the driver chooses not to refuse is the point in time at which the driver actually consents to a blood draw. And the Supreme Court of Georgia in *Williams v. State, supra*, noted that the determination of actual consent to the procuring and testing of a driver's blood requires the determination of the voluntariness of the consent under the totality of the circumstances. *Id*. See, also, *People v. Harris*, 234 Cal. App. 4th 671, 184 Cal. Rptr. 3d 198 (2015); *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013).

[9] The Supreme Court of Georgia observed that post-*McNeely*, "the cases seem to indicate . . . that mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the

constitutional mandate of a warrant." *Williams v. State*, 296 Ga. at 822, 771 S.E.2d at 377. Our reading of the cases is in accord. For example, in *Flonnory v. State*, 109 A.3d 1060, 1065 (Del. 2015), the Supreme Court of Delaware concluded that "the trial court erred when it concluded that 'Defendant's statutory implied consent exempted the blood draw from the warrant requirement' of the Fourth Amendment." The court in *Flonnory* remanded the cause for the trial court to "conduct a proper Fourth Amendment analysis" which would entail "considering the totality of the circumstances." 109 A.3d at 1066. The court in *Flonnory* noted that in *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), the U.S. Supreme Court had acknowledged that implied consent laws were a legal tool to enforce drunk driving laws but the Court had still explained that "'[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.'" *State v. Flonnory*, 109 A.3d at 1066. See, also, *Weems v. State*, 434 S.W.3d 655 (Tex. App. 2014) (implied consent and mandatory blood draw statutory scheme is not, per se, exception to Fourth Amendment warrant requirement); *Aviles v. State*, 443 S.W.3d 291 (Tex. App. 2014) (mandatory blood draw authorized by statute was not categorical per se exception to warrant requirement and consideration of totality of circumstances was required under Fourth Amendment). We agree with the rationale of the foregoing authorities. Accordingly, we conclude that a court may not rely solely on the existence of an implied consent statute to conclude that consent to a blood test was given for Fourth Amendment purposes and that the determination of whether consent was voluntarily given requires a court to consider the totality of the circumstances.

[10] In considering the totality of the circumstances, we believe that the existence of an implied consent statute is one circumstance a court may and should consider to determine voluntariness of consent to a blood test. In the present

case, the county court did not merely note that Modlin had given his implied consent by operation of § 60-6,197(1), but instead, the county court properly considered the totality of the circumstances before it when it concluded that Modlin had consented to the blood draw. The court held a hearing on Modlin's motions to suppress, at which hearing both Modlin and the State presented evidence regarding, inter alia, the issue of consent.

The State presented evidence that Modlin had operated a motor vehicle in Nebraska, which established that Modlin had given his implied consent as understood under § 60-6,197(1), and that he affirmed that consent at the hospital. The evidence showed that Modlin was given, read, and understood the chemical test advisement form. The form itself indicates the consequences if the driver exercises his or her refusal option. The State presented evidence that Modlin did not do or say anything to Dahlke or the phlebotomist to indicate that he wished to refuse the test, and Modlin conceded as much. Given this evidence, we conclude that the county court did not err in its determination that under the totality of the circumstances, Modlin actually consented to the test.

Notwithstanding the foregoing facts, Modlin makes a variety of arguments, all to the effect that he did not actually consent voluntarily to the blood test. Primary among his arguments is the claim that he was coerced because he was given a difficult choice between consenting to the blood test or refusing to give his consent, with its attendant consequences. In this regard, Modlin acknowledges that he was made aware that if he refused the test, he would be subject to the legal consequences of administrative license revocation and criminal charges. Although such consequences render refusal a difficult choice to make, courts in other jurisdictions have generally determined that the difficulty of such choice does not render consent involuntary. In *People v. Harris*, 234 Cal. App. 4th 671, 689, 184 Cal. Rptr. 3d 198, 213 (2015), the court stated: "That the motorist is forced to choose between

submitting to the chemical test and facing serious consequences for refusing to submit, pursuant to the implied consent law, does not in itself render the motorist's submission to be coerced or otherwise invalid for purposes of the Fourth Amendment." See, similarly, *State v. Brooks*, 838 N.W.2d 563, 570-71 (Minn. 2013) ("a driver's decision to agree to take a test is not coerced simply because [the State] has attached the penalty of making it a crime to refuse the test" and "while the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one to make,' the criminal process 'often requires suspects and defendants to make difficult choices'"); *State v. Fetch*, 855 N.W.2d 389, 393 (N.D. 2014) ("consent to a chemical test is not coerced and is not rendered involuntary merely by a law enforcement officer's reading of the implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the criminal penalty, and presents the arrestee with a choice"); *State v. Moore*, 354 Or. 493, 502-03, 318 P.3d 1133, 1138 (2013) ("advising a defendant of the lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that the defendant makes an informed choice whether to engage in that behavior or not. . . . accurately advising a defendant of a lawful penalty that could be imposed may well play a role in the defendant's decision to engage in the particular behavior, but that does not mean that the defendant's decision was 'involuntary'").

[11,12] For completeness, we note that we have said mere submission to authority is insufficient to establish consent to a search. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001). However, we do not find mere submission in this case, but instead observe that Modlin made decisions, the totality of which show consent. Modlin made the choice to drive in Nebraska, thereby giving his implied consent under the statute. We have stated that once given, consent to search may be withdrawn. *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010). Withdrawal of consent need not be effectuated through

particular "magic words," but an intent to withdraw consent must be made by unequivocal act or statement. *Id*. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Id*.

In this case, there was no evidence of an act or statement, unequivocal or otherwise, made by Modlin to indicate a withdrawal of his implied consent. Modlin acknowledges that he was made aware of the choice to refuse the blood draw but that he did and said nothing to objectively manifest or choose refusal. Although Modlin may not have verbally indicated his consent, consent to search may be implied by action rather than words. See *State v. Brooks, supra*. In this case, Modlin's conduct indicated his consent, because he allowed the phlebotomist to draw his blood without doing anything to manifest a refusal to either Dahlke or the phlebotomist. The county court did not err when it determined that Modlin had consented and not merely submitted to authority.

Finally, we address the content and adequacy of the advisement form as it relates to the totality of the circumstances. We recognize that the chemical test advisement form did not explicitly state that Modlin was being asked to choose between the blood draw or refusal. The advisement form did, however, set forth the consequences of refusing the test, which we believe adequately notified Modlin that refusal was an option, albeit one with unpleasant consequences. The form states, "Refusal to submit to such test or tests is a separate crime for which you may be charged." We are aware that there exist more robust forms. See, e.g., *State v. Barnes*, 331 Ga. App. 631, 633 n.2, 770 S.E.2d 890, 891 n.2 (2015) (noting that Georgia statute provides for notice which describes submission to chemical test and consequences of refusal and concludes: "'Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?'"). We note that other state courts which have considered a form

that notifies the driver of the consequences of refusal have characterized the form as presenting a "yes" or "no" option. E.g., *State v. Padley*, 354 Wis. 2d 545, 849 N.W.2d 867 (Wis. App. 2014). Because the chemical test advisement form in this case indicated to Modlin the consequences of exercising the option of refusal, the fact that he submitted after reading the form was among the circumstances that supported a finding of voluntary consent.

Having concluded that the county court did not err when it concluded that Modlin consented to the blood draw, we further conclude that the county court did not err when it concluded that the warrantless blood draw was not in violation of the Fourth Amendment and overruled Modlin's motion to suppress evidence of the result of the blood test. We therefore reject Modlin's claim that the Court of Appeals erred when it affirmed the district court's decision which had affirmed the county court's overruling of the motion to suppress.

## CONCLUSION

We conclude that a blood draw of an arrestee in a DUI case is a search subject to Fourth Amendment principles and that when the State claims the blood draw was proper pursuant to the consent exception to the warrant requirement, actual voluntary consent is to be determined by reference to the totality of the circumstances, one of which is the implied consent statute.

We conclude that the county court properly considered the totality of the circumstances and that it did not err when it determined Modlin consented to the blood draw. As a result, the county court did not err when it overruled Modlin's motion to suppress evidence of the result of the blood test and the district court and the Court of Appeals did not err when they affirmed that ruling. On further review, we affirm the decision of the Court of Appeals.

Affirmed.

Stephan, J., not participating.